BROWNFIELD, APPELLANT, *v.* MCCULLION, REGISTRAR, APPELLEE.

(No. 84AP-105—Decided
August 16, 1984.)

*James M. Jewett,* for appellant.

*Gregory S. Lashutka,* city attorney, *Ronald J. O'Brien,* city prosecutor, *David E. Tingley* and *Joyce B. Link,* for appellee.

WHITESIDE, J. This is an appeal from a judgment of the Franklin County Municipal Court imposing the statutory suspension of appellant Robert Wendell Brownfield's driving rights for his refusal to submit to a chemical test pursuant to R.C. 4511.191. In support of his appeal, appellant raises four assignments of error as follows:

"I. The trial court erred in sustaining the report of the court referral officer and finding that the arresting officers had reasonable ground to believe that Appellant had been driving a motor vehicle upon the public highways of this state while under the influence of alcohol and the trial court erred in holding that it is not required to follow the holding of the case of McCarty vs. Herdman, and erred in allowing the use of the alleged admissions of Appellant against him in the trial court.

"II. The trial court erred in sustaining the report of the referee and finding that Appellant refused to submit to a chemical test upon request of the officer, and in holding that there is no time limit within which one must submit to a chemical test pursuant to section 4511.191 O.R.C., erred in finding that Appellant was advised of the consequences of refusal to take a test, and erred in failing to find that Respondent failed to immediately inform Appellant as required by section 4511.191(E) O.R.C.

"III. The trial court erred in refusing to adequately consider the credibility of the witnesses, in adopting, without adequately reviewing, the recommendations of the court referee, basing his decision on unreasonable suppositions, in failing to apply the proper standard to such hearing, and in adopting the recommendations and findings of the referee.

"IV. The trial court erred in failing and refusing to grant to Appellant work related driving privileges during the period of suspension."

The first assignment of error pertains to the initial issue established by R.C. 4511.191(F) in such proceedings as to "whether the law enforcement officer had reasonable ground to believe the petitioner was operating a motor vehicle upon the public highways in this state while under the influence of alcohol." Appellant contends that the officers had no such reasonable grounds because they did not observe him actually drive his motor vehicle.

The trial court adopted the findings of fact of a referee who heard the matter, including a finding that, when the officers first came into contact with appellant, his motor vehicle was parked at the curb, and he was seated behind the wheel of the motor vehicle with the engine running.

The officers approached appellant because they had received a radio message from another cruiser indicating that a citizen had reported to the officer operating the other cruiser that he had observed a vehicle being operated erratically on the same street. The citizen noted the license number of that vehicle and gave it to the police, and the officers ascertained that the vehicle was registered to appellant and obtained his address and drove there within minutes after receiving the message. The officers parked their cruiser across the

street from appellant's automobile, walked across the street, requested appellant to shut off the motor of his vehicle and asked him if he had been driving on Arcadia. Appellant responded that he had been driving his vehicle. The officers then asked appellant to get out of his automobile, which he did, at which time the officers "noticed a strong odor of alcohol, slurred speech and gesturing" on appellant's part. Appellant either refused or failed to take a field sobriety test requested by the officers at the scene. He then was arrested and taken to the Franklin County Jail.

Although the evidence is conflicting, the factual findings by the referee, adopted by the trial court, are supported by the testimony of the police officers, which conflicted in several respects from that of appellant himself.

Appellant first contends that his response to questioning by the police officers that he had been driving cannot be the predicate for reasonable cause to believe he had been operating his motor vehicle because he was not advised of his *Miranda* rights. In *State* v. *Buchholz* (1984), 11 Ohio St. 3d 24, the Supreme Court held that *Miranda* warnings must be given prior to any custodial interrogation where an individual is suspected of committing a misdemeanor. However, a proceeding pursuant to R.C. 4511.191 is a civil, rather than a criminal, proceeding. *State* v. *Starnes* (1970), 21 Ohio St. 2d 38 [50 O.O.2d 90]. In addition, the failure to give *Miranda* warnings ordinarily operates to exclude evidence obtained by the custodial interrogation at the trial of the criminal charges, not to vitiate or void an arrest.

Underlying appellant's contention in this respect is a question not briefed by the parties but which is inherent in the issue raised. Appellant assumes that one cannot be found operating a motor vehicle unless he is observed driving the vehicle, that is, that the vehicle must be in motion. However, the word "op-

erate" is a broader term than the word "drive" when used with respect to a motor vehicle, and, while there is a conflict of authority, many jurisdictions have found that a person may operate a vehicle even though the vehicle is not moving. See Annotation (1979), 93 A.L.R. 3d 7. While there has been no authoritative definition of what constitutes operation of a motor vehicle within the contemplation of R.C. 4511.19, the Supreme Court in *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140 [38 O.O.2d 366], held in paragraph three of the syllabus that "* * * a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved * * *" without further explanation, although Judge Zimmerman in the opinion at 145 observed:

"There are many reported cases dealing with the subject of operating a motor vehicle while under the influence of intoxicating liquor, and they are in conflict. Some hold that the term, 'operate,' as used in a statute or ordinance connotes motion, and, unless the vehicle is in motion, there is no offense. Other cases hold, in particular circumstances, that 'operate' may apply to a stationary vehicle, where it is plain that the operator is in a thoroughly intoxicated state and obviously has moved or intends to move the vehicle."

The Municipal Court of Canton, in *State* v. *Williams* (1969), 20 Ohio Misc. 51 [49 O.O.2d 97], and the Hamilton County Municipal Court in *State* v. *Martin* (1982), 5 Ohio Misc. 2d 22, both came to the conclusion that a person seated behind the wheel of a motor vehicle with the motor running may be in actual physical control of the vehicle but is not operating the vehicle within the contemplation of R.C. 4511.19. The rationale of these decisions is that the legislature necessarily intended a difference between actual physical control of a motor vehicle and operation of a

motor vehicle since R.C. 4511.19 was amended effective October 21, 1953, to delete a prohibition against actual physical control of a vehicle, leaving only the prohibition against operation of a motor vehicle while under the influence of intoxicating liquor. While mere physical control of a vehicle may be insufficient to constitute operation of the vehicle within the contemplation of R.C. 4511.19, to constitute physical control it is unnecessary that the person sitting behind the steering wheel has inserted the key in the ignition and started the motor of the vehicle. Rather, as expressly held in the syllabus of *Cincinnati* v. *Kelley* (1976), 47 Ohio St. 2d 94 [1 O.O.3d 56]:

"To be in actual physical control of an automobile * * * a person must be in the driver's seat of the vehicle, behind the steering wheel, in possession of the ignition key, and be in such condition that he is physically capable of starting the engine and causing the vehicle to move."

Here, appellant was two steps beyond the requirements for actual physical control because not only was he seated behind the steering wheel and in possession of the ignition key, but the ignition key had been inserted in the ignition, and the motor of the vehicle had been started and was running. Furthermore, appellant was in such a position that he could have caused the vehicle to move merely by placing it in gear. Such additional activity is sufficient to constitute operation of the vehicle. In other words, consistent with *Mentor, supra,* a stationary vehicle is being operated where a person is seated behind the steering wheel of the vehicle with the ignition key in the ignition and the motor running. While it would appear that, under circumstances such as herein involved, a police officer may make reasonable inquiry of a motorist as to whether he had been operating the vehicle without first giving *Miranda* warnings, any error in this respect on the part of the trial court is harmless since other evidence clearly established that appellant was operating his motor vehicle, although it was not moving at the time when the police officers approached him. The first assignment of error is not well-taken.

The second assignment of error raises two issues: (1) whether appellant was advised of the consequences of a refusal to take a chemical test pursuant to R.C. 4511.191; and (2) whether such request and refusal were timely.

While the testimony of the two police officers is conflicting in that each indicated the other advised appellant of the consequences of a refusal to take a requested chemical test, both testified that not only was the form stating such consequences read to appellant, but he was given that form to read. Both officers agreed that Officer Gammill requested appellant to take a urine test, and he refused. Even assuming the evidence to be confusing, as well as conflicting, it was sufficient to permit the trial court to find that appellant was advised of the consequences of a refusal to take a designated chemical test.

The timeliness of the request, however, poses a more difficult problem. Although the evidence conceivably could have justified a different conclusion, the findings of fact by the referee adopted by the trial court find that appellant was arrested at approximately 11:25 p.m., but the time of refusal was 2:15 a.m. the following morning, some two hours and fifty minutes later. R.C. 4511.19(B), in part, provides that:

"In any criminal prosecution * * * relating to operating a motor vehicle while under the influence of alcohol, the court may admit evidence on the concentration of alcohol in the defendant's * * * urine at the time of the alleged violation as shown by chemical analysis of the defendant's * * * urine * * *

withdrawn within two hours of the time of such alleged violation."

In *Cincinnati* v. *Sand* (1975), 43 Ohio St. 2d 79 [72 O.O.2d 44], the Supreme Court, in paragraph two of the syllabus, held that the results of a breathalyzer test "may only be admitted in evidence" if it is established that the bodily substance was withdrawn within two hours of the time of the alleged violation. There is no reason for a different rule where the bodily substance is urine, rather than breath. However, this court, in *Barber* v. *Curry* (1974), 40 Ohio App. 2d 346 [69 O.O.2d 312], prior to the decision in *Sand, supra,* held that the two-hour provision of R.C. 4511.19 does not preclude the admission of evidence of a chemical test administered more than two hours after the alleged violation if properly qualified by expert evidence laying a foundation for admission of the chemical test into evidence. In *Barber,* this court also held that a suspension for refusal to take a chemical test pursuant to R.C. 4511.191 might properly be imposed, even though the request was made more than two hours after the alleged violation. This court stated at 349:

"Although no time limitation for a chemical test is specified in R.C. 4511.191, it is fundamental that such test be offered and refused within a reasonable time after the offense of driving while under the influence of alcohol. It would also seem fundamental that the reasonable time period is that period of time within which the chemical test will provide reliable evidence of whether the person so arrested was under the influence of alcohol at the time of his arrest for driving while under the influence of alcohol."

In *Barber,* the time of the refusal was found to be more than two hours after the alleged violation, but less than three hours. Since the finding was equivocal, we found that the plaintiff had not established that the test was first offered and refused at a time when the results would not constitute competent or probative evidence. Here, the trial court did not determine that issue but, instead, stated:

"* * * A test taken after the two-hour limitation is still admissible during a trial. The prosecution must only offer expert testimony to explain the significance of the test. * * *"

While it is not necessary for this court to modify the decision in *Barber,* it must be noted that, in that case, we did not consider the fact that the two-hour limitation of R.C. 4511.19 was added to that section by the same act which enacted R.C. 4511.191, the implied-consent law. Thus, there is a necessary interrelationship between the two since they were enacted by the same act and must be read *in pari materia.* Also, as we did note in *Barber, supra,* the Supreme Court has related the two-hour limitation of R.C. 4511.19 to the time within which it is reasonable for the arrested person to make his decision whether to submit to a chemical test. See *In re Brooks* (1971), 27 Ohio St. 2d 66 [56 O.O.2d 37]. Here, the delay as found by the trial court was two hours and fifty minutes. The delay was so substantial as to permit an inference, in the absence of evidence to the contrary, that the results of the test would not be admissible at trial since the legislatively determined time limitation for *per se* admission is two hours. To establish probable inadmissibility of an untimely R.C. 4511.19 request to submit to a chemical test, it is not necessary that the appellant produce expert testimony conclusively establishing inadmissibility. Rather, the length of the delay itself is sufficient for a *prima facie* establishment that the chemical test was offered and refused at a time when the results thereof would not constitute competent or probative evidence, placing upon the appellee registrar the burden of going forward with the evidence to rebut the

inference of inadmissibility. For this reason, and to this extent, the second assignment of error is well-taken.

By the third assignment of error, appellant contends that the trial court erred in refusing adequately to consider credibility of witnesses and in adopting the recommendations and findings of the referee. The trial court did inappropriately state that it would not substitute its judgment for that of the referee as to the credibility of the witnesses, since it is the function of the trial court to make such determination independently from the transcript of the evidence. However, the trial court's decision clearly indicates that it proceeded to weigh the evidence and determine credibility of witnesses, and did so emphatically, consistently with the referee's findings. It is this weighing of the evidence by the trial court to which appellant also objects, referring to the court's comments as "unreasonable suppositions." We find no merit to appellant's contentions in this respect. The third assignment of error is not well-taken.

By the fourth assignment of error, appellant contends that the trial court erred in refusing to grant appellant work-related driving privileges in accordance with the provision of R.C. 4511.191(G)(5) that "[t]he court may, if it finds reasonable cause to believe that suspension would seriously affect the person's ability to continue in his employment, grant the person occupational driving privileges during the period of suspension." The referee recommended a finding that appellant's ability to continue his employment would be seriously affected by the suspension. The trial court did not reject this finding but, instead, denied occupational driving privileges predicated upon the following:

"* * * Considering Petitioner's occupation, this court does not feel it would be feasible to draft an entry granting limited privileges and not make them unlimited. Considering Petitioner's prior driving record, this court further does not feel Petitioner is deserving of such consideration by the court. His record indicates he habitually drives without consideration for the safety of other persons, or their property. * * *"

R.C. 4511.191(G)(5) utilizes permissive, not mandatory, language and, therefore, vests some discretion in the trial court. Here, the trial court exercised its discretion upon a proper basis, appellant's prior driving record, coupled with the difficulty in granting only limited privileges since appellant, as an oil, gas and coal developer in Ohio and West Virginia, makes frequent trips. Appellant's driving record does indicate many prior traffic offenses, including a prior financial responsibility suspension and a prior implied-consent suspension of driving rights. Under the circumstances, we find no abuse of discretion on the part of the trial court, and the fourth assignment of error is not well-taken.

For the foregoing reasons, the first, third and fourth assignments of error are overruled, and the second assignment of error is sustained; and the judgment of the Franklin County Municipal Court is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed and cause remanded.*

REILLY and STILLMAN, JJ., concur.

STILLMAN, J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.