## Cline
## v.
## Bureau of Motor Vehicles
*[Cite as 4 AOA 181]*

*Case No. 89FU000010*
*Fulton County, (6th)*
*Decided June 22, 1990*

*Peter D. Short, for Appellant.*

*William R. Swigart, Prosecuting Attorney, and Roger D. Nagel, for Appellee.*

RESNICK, J.

This is an appeal of a judgment of the Fulton County Court affirming the one year suspension of plaintiff-appellant's automobile operator's license by the Registrar of the Bureau of Motor Vehicles ("BMV") pursuant to R.C. 4511.191, the implied consent statute.

On March 8, 1989, appellant filed a petition to revoke or modify notice of suspension in the trial court. On May 24, 1989, a hearing was held on that petition. At the hearing, appellant testified that he and a nephew, Doug Ball, had been in Pioneer, Ohio, on business on the evening of November 19, 1989 and that they later had dinner in Pioneer and had a "few beers." The pair then drove to Alvordton, Ohio, and spent a few hours at the Alvordton Tavern where they consumed some more beers. Appellant testified that they left the tavern just after midnight and headed for West Unity, Ohio, in order to drop an acquaintance at her home. Appellant stated that Ball was driving Cline's 1988 "double seater" pick up truck at that time and that due to weather conditions he failed to negotiate a turn in the road, went off the road, across a ditch, and came to rest partially in a field and partially in the ditch. The front wheels of the truck were mired in the mud and, according to appellant, the back wheels were off the ground hanging over the ditch. Appellant and his nephew manually attempted to push the truck but failed. Appellant testified that when they re-entered the truck, he sat behind the wheel and his nephew moved to the back seat.

Ball also testified at the hearing and related substantially the same sequence of events as his uncle. Trooper Gregory A. Rayot of the Ohio State Highway Patrol testified that he was dispatched to the accident scene and arrived at approximately 3:30 a.m. and saw the truck stuck in the ditch. He stated that the vehicle's engine was running, that appellant was asleep behind the steering wheel, and that appellant did not initially respond when the trooper knocked on the window. Rayot further attested that when Cline finally did respond, appellant's speech was "slurred and mumbled" and that the trooper detected the strong odor of alcohol on appellant's breath. Rayot also testified that appellant told him that he, not his nephew, was operating the truck at the time of the accident. At that point, the trooper arrested appellant, transported him to the Montpelier Police Department, and requested that Cline take an breathalyzer test. Appellant refused and a refusal form was completed and witnessed.

On May 24, 1989, the trial court filed a journal entry affirming the suspension of appellant's operator's license. Upon timely request of appellant, that court issued findings of fact and conclusions of law on June 8, 1989. On June 19, 1989, appellant filed a motion for a new trial based upon Civ. R. 59(A)(3) and 59(A)(8). This motion was denied, without hearing, by the court below on June 20, 1989.

Appellant appeals the affirmance of the suspension and asserts as error

"Assignment of Error I (a)

THE TRIAL COURT ERRED IN FINDING THAT RONALD D. CLINE OPERATED HIS TRUCK BY DRIVING IT INTO THE PRIVATE FIELD.

"Assignment of Error I (b)

THERE IS NO EVIDENCE TO SUBSTANTIATE A FINDING THAT RONALD D. CLINE WAS OPERATING HIS TRUCK IN THE FIELD WHEN THE TROOPER ARRIVED.

"Assignment of Error II (a)

APPELLANT RONALD CLINE DID NOT VIOLATE R.C. SEC. 4511.191 SINCE THE BREATHALYZER TEST WAS OFFERED TO HIM MORE THAN TWO HOURS *AFTER* HE HAD ALLEGEDLY OPERATED HIS VEHICLE ON A PUBLIC HIGHWAY.

"Assignment of Error II (b)

APPELLANT RONALD CLINE IS NOT SUBJECT TO THE IMPLIED CONSENT LAW OF R.C. SEC. 4511.191 WHILE IN A PRIVATE FIELD.

"Assignment of Error III

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE.

"Assignment of Error IV

THE TRIAL COURT ERRED IN DENYING APPELLANT OCCUPATIONAL DRIVING PRIVILEGES DURING THE SUSPENSION PERIOD"

Appellant's assignments of error I(a) and I(b) and II(b) are interrelated and shall, therefore, be considered together.

R.C. 4511.191, the implied consent statute, as it was effective in November 1988, provided that one who operates a motor vehicle upon a public highway in Ohio shall be deemed to have consented to a chemical breath test if there existed probable cause to believe that he was operating his vehicle while under the influence of alcohol and that he was arrested for that offense. A refusal to submit to the test requires that the registrar of motor vehicles, upon receiving certification that certain statutory conditions were followed, must suspend the arrested person's operator's license for one year. See R.C. 4511.191(C) and (D). After receiving notification of the suspension, the licensee has a right to file a petition in a municipal or county court requesting a review of the suspension. R.C. 4511.191(E) and (F).

At the hearing on this matter, the petitioner has the burden of proving, by a preponderance of the evidence, that the registrar erred in suspending his license. *Hoban* v. *Rice* (1971), 25 Ohio St. 2d 111. Furthermore, the scope of the hearing is limited to the following issues:

(1) whether the arresting officer had reasonable ground to believe that the person had been operating a motor vehicle upon the public highways of Ohio while under the influence of alcohol;

(2) whether the petitioner was placed under arrest;

(3) whether the petitioner refused to submit to the chemical test upon request;

(4) if the petitioner refused, whether he was advised of the consequences of his refusal; and

(5) whether the petitioner's employment is of such a nature that his ability to continue in the employment would be seriously affected if the suspension is imposed. See R.C. 4511.191(F) and R.C. 4511.191(G)(5). See, also, *Hoban, supra*, at paragraph two of the syllabus.

Appellant raises questions concerning issue (1) in his Assignments of Error I(a) and I(b) and II(b).

Appellant first contends that a finding that he was operating a motor vehicle upon a public highway, *i.e.*, that Cline was operating the truck prior to and at the time of the accident, is against the manifest weight of the evidence offered at hearing.

A judgment supported by some competent, credible evidence going to all the essential elements of a case will not be reversed on appeal as being against the manifest weight of the evidence. *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, syllabus. Further, a presumption of correctness is accorded to the findings of the trial court because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80.

In the case before us, the trial court had the opportunity to observe the witnesses and to hear their testimony. That court chose to accord greater weight and credibility to the testimony of Trooper Rayot. That issue is a proper matter for the trier-of-fact. See *Alarm Device Mfg. Co.* v. *Arnold Industries* (1965), 65 Ohio App. 2d 256, 263. Therefore, this court refuses to substitute its judgment for that of the trial court. *Id.*

Appellant also argues that any determination that Cline was operating the truck on a public highway at the time Rayot arrived at the accident scene is against the manifest weight of the evidence.

Although both parties raised this issue, the trial court's judgment entry reflects that the court's decision was based upon a finding that appellant was operating his pick up truck upon a *public highway* prior to and at the time of *his accident* and not at the time of discovery. Therefore, this issue is not relevant and the court will not substitute its judgment for that of the trial court. Accordingly, appellant's Assignments of Error I(a), I(b) and II(b) are found not well-taken.

In appellant's assignment of error II(a), he asserts that an automobile operator's license cannot be suspended under the implied consent statute when a refusal to take an offered breathalyzer test occurs more than two hours after the licensee has operated a vehicle on a public highway while allegedly intoxicated.

Appellant relies on *Brownfield* v. *McCullion* (1984), 20 Ohio App. 3d 197, to support the proposition that when a test, if taken more than two hours after the alleged offense, would be *per se* inadmissible in a prosecution for operating under the influence, the refusal to submit to such a test does not warrant an implied consent suspension.

The true holding of *Brownfield, supra*, as found at paragraph two of the syllabus, is "a substantial delay beyond the two-hour period specified in R.C. 4511.19 by a police officer in requesting that a person submit to a chemical test pursuant to R.C. 4511.191 permits an infer-

ence that the test was offered and refused at a time when the results thereof would not constitute competent or probative evidence." *Barber* v. *Curry* (1974), 40 Ohio App. 2d 346. [69 O.O. 2d 312], distinguished.

The court in *Brownfield, supra,* would thus allow test results into evidence taken after the two hour provision, but where there is evidence of a substantial delay beyond that time, would permit an *inference* of inadmissibility, and require that the registrar assume the burden of going forward with evidence to rebut the inference of inadmissibility. The time delay in *Brownfield, supra,* was two hours and fifty minutes and in *Barber, supra,* between two and three hours. The Court in distinguishing *Barber, supra,* stated that in the writing of *Barber, supra,* they did not consider the fact that the two-hour limitation of R.C. 4511.19 was added to that section by the same act which enacted R.C. 4511.191 and therefore the two statutes must be read *in pari materia.* Further, the court claimed that the Supreme Court of Ohio related the two hour limitation of R.C. 4511.19 to the time within which it is reasonable for an arrested person to make a decision whether to submit to a chemical test. *Brownfield, supra,* at 201, citing *In re Brooks* (1971), 27 Ohio St. 2d 66.

However, *Brooks, supra,* a license suspension case under R.C. 4511.191, actually held that once a motorist refuses a test within the two hour period, he cannot later, even though within the two hour period of time, agree to take the test, and thereby preclude the registrar from suspending his license based upon a defendant's initial refusal of the test. The issue dealt with the question as to whether there was a valid refusal and not the time within which it would be reasonable for a person to make a decision whether to submit to the test. In paragraph one of the syllabus in *Brooks, supra,* the court stated that the time limitation in R.C. 4511.19 is only a restriction on the admission in evidence of the results of such tests and does not have the effect of extending the time that an arrested person may choose to take the test required pursuant to R.C. 4511.191(D). In reaching this decision, (that the two hour time frame is only related to the admissibility of the evidence in a R.C. 4511.19 criminal case) the court reaffirmed its holding in *Hoban, supra,* that the implied consent statute is constitutional and that the proceedings thereunder are *civil* and *administrative in nature* and are *independent* of any criminal proceedings. The court reiterated that a suspension under R.C.

4511.191(D) will be upheld if the court finds that "(1) the arresting officer had reasonable ground to believe the person had been driving a motor vehicle upon the public highways of this state while under the influence of alcohol, (2) the person was placed under arrest, (3) the person refused to submit to a chemical test * * * upon the request of the arresting officer, and (4) the person was advised of the consequences of his refusal." *Id.,* at 68-69.

The Supreme Court of Ohio has not only held that proceedings under the implied consent law are civil and administrative in nature but also held that the burden of going forward and the burden of proof is on the licensee. *State* v. *Starnes* (1970), 21 Ohio St. 2d 38. See, also, *Foks* v. *Andrews* (1977), 55 Ohio App. 2d 253. In *Andrews* v. *Turner* (1977), 52 Ohio St. 2d 31, paragraph two of the syllabus, states:

"In a hearing conducted pursuant to R.C. 4511.191(F), the trial court shall impose the suspension provided for in R.C. 4511.191(D) only if it finds that the arrested person has failed to show error in the action taken by the registrar of motor vehicles. The burden is on the licensee to prove, by a preponderance of the evidence, that there was error." *Hoban* v. *Rice,* 25 Ohio St. 2d 111, approved and followed.)

The court in *Brownfield, supra,* by imposing a shift in the burden of persuasion when a test is refused after the two hour time limitation of R.C. 4511.19 has cast an impossible burden on the state. Initially, the trial court is called upon to determine the significance of what a "substantial delay" may be. In *Barber, supra,* at 349, the court stated:

"No one would contend that a refusal to take a chemical test several days, or longer, after the time of the alleged offense, would constitute a refusal to take a test within the contemplation of R.C. 4511.191."

Certainly, no one would argue with this proposition. However, when it comes to periods of over two, three or, perhaps even four or five hours after the time of the alleged offense, this court is of the opinion that under the existing law as espoused by the Supreme Court of Ohio, the only question that actually arises is whether it would be reasonable under all of the circumstances to request a licensee to take the test. The Supreme Court of Ohio has never suggested in any of the many decisions concerning R.C. 4511.191 proceedings or in its relationship to an R.C. 4511.19 proceeding that the burden of persuasion shifts to the state upon a finding of

"substantial delay" in offering the test. As stated earlier herein, the applicable law is that the burden of going forward and the burden of proof is on the licensee. *Starnes, supra.* The question of the reasonableness of the time of offering the test is part of the consideration a court determines in determining whether an officer had reasonable grounds to believe a petitioner was operating a vehicle upon a highway while under the influence of alcohol. In asking a court to initially determine whether there has been a substantial delay in offering the test that might affect the test's admissibility in an R.C. 4511.19 proceeding, is to place the court in the role of an expert and requires that court to make a finding that only an expert may be able to make.

Finally, and most interesting, is the impossible position in which the registrar has been placed by the holding in *Brownfield, supra.* Assuming that a court could with any reliability determine that a substantial delay had occurred that would affect the admissibility of the test in an R.C. 4511.19(A)(1) proceeding, how can any expert (or lay witness) determine whether a test would have been admissible without having an initial test? It is axiomatic, that to extrapolate for purposes of possible admissibility, there must be something from which to extrapolate. In a refusal case there is *nothing* that can be used to extrapolate for purposes of possible admissibility in an R.C. 4511.19(A)(1) criminal proceeding. Thus, the registrar is effectively estopped from ever being able to carry the burden should the *Brownfield* holding be applied. Of course, under the *Barber* decision, the licensee is likewise subject to an impossible burden.

For all of the above reasons, this court is of the opinion that neither the *Barber* decision nor the *Brownfield* decision is a realistic solution to the problems created when a test is refused after the two hour time period of R.C. 4511.19(B). Both create impossible burdens for purposes of an R.C. 4511.191 hearing. The former on the licensee, the latter on the registrar. Therefore, when no test is taken, the reasonable time period should not be linked to the question of the probable admissibility of a test, had one been given. The condition and behavior of the licensee at the time the officer initially encounters the licensee is the linchpin for a determination of the reasonableness of any refusal. The ability of the licensee to perceive, make judgments, coordinate movements, his speech, the condition of the eyes, the odor of alcohol are but some of the other conditions to be taken into consideration as to the reasonableness of any refusal to take a test when offered after the two hour time period. That is not to say that there may not still remain good reasons why a licensee might legitimately refuse a test offered after the two hour period. For example, where the licensee has consumed more alcohol prior to the officer's arrival but after the alleged offense or when the licensee suffers from some medical or physical disability which might affect the accuracy of a test.

In this case, assuming appellant's version of the time sequence, the alleged offense occurred around 12:00 midnight to 12:30 a.m. Because of the time and vicinity of the occurrence and the fact that neither the licensee nor his passenger went to seek any aid, almost three or three and one-half hours had passed until police came upon the scene. The officer, at 3:30 a.m., noting the condition and behavior of the licensee and having determined that he was the driver when the pick-up truck went off the highway and into the field, arrested the licensee and transported him to Montpelier, Ohio, for a breathalyzer test. Thus, it may well have been four hours from the time of the accident until the licensee was offered the test. Nevertheless, for the purposes of the implied consent law, the important issue for determination is whether the officer had reasonable grounds to believe that the licensee had been operating a motor vehicle on the public highways while under the influence of alcohol. In this case, the officer did have reasonable grounds. Therefore, appellant's Assignment of Error II(a) is found not well-taken.

In Assignment of Error IV, appellant contends that the trial court erred in refusing to grant him limited occupational privileges under R.C. 4511.191(G)(5) which provides:

"The court may, if it finds reasonable cause to believe that suspension would seriously affect the person's ability to continue in his employment, grant the person occupational driving privileges during the period of suspension * * *."

The language of R.C. 4511.191(G)(5) vests discretion in the trial court to determine whether work-related driving privileges are warranted. *Brownfield, supra,* at 202. In the instant case, the trial court properly exercised its discretion in denying occupational driving privileges. Appellant testified that in his roofing business he drove three to four hundred miles per day, both within Ohio and out-of-state. It would be extremely difficult to grant any kind of limited driving privileges in this situation. Moreover, appellant also indicated that Ball, who is his

foreman, did quite a bit of his driving for him in the course of the business. In addition, appellant's driving record reveals that he had been charged with driving left of center in 1985, speeding in 1986, the accident in November 1988, and a second accident in December 1988. Under these circumstances, the trial court did not abuse its discretion in denying limited occupational driving privileges. Accordingly, appellant's fourth assignment of error is found not well-taken.

In his third assignment of error, appellant claims that the trial court erred in denying his motion for a new trial grounded upon newly discovered evidence.

Civ. R. 59 provides, in material part:

"(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

"(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;"

The granting or denial of a motion for a new trial based on newly discovered evidence cannot be reversed on appeal absent an abuse of discretion. *Taylor* v. *Ross* (1948), 150 Ohio St. 448. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude in reaching its decision was arbitrary, unreasonable, or unconscionable. *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218, 219-220 (citations omitted.)

The standard to be applied in determining whether to deny or grant a new trial upon newly discovered evidence is as follows

"To warrant the granting of a motion for a new trial based on the ground of newly discovered evidence, it must be shown that (1) the new evidence must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could not in the exercise of due diligence have been discovered before the trial, (4) it must be material to the issues, (5) it must not be merely cumulative to former evidence, and (6) it must not merely impeach or contradict the former evidence." *Wagner* v. *Smith* (1982), 8 Ohio App. 3d 90, at 95, citing *Sheen* v. *Kubiac* (1936), 131 Ohio St. 52, paragraph three of the syllabus.

In the case *sub judice*, appellant filed, in support of his motion, the affidavit of Officer John Richards of the West Unity Police Department. In that affidavit, Richards averred that he came upon a pick-up in a field and spoke with both Cline and Ball who told Richards that Ball had been driving the truck at the time of the accident. The nature of this evidence is obviously impeachment evidence and would be relevant only for the limited purpose of impeaching the credibility of Trooper Rayot. As such, this newly discovered evidence would be unlikely to change the result if a new trial had been granted. We further note that the trial court did not abuse its discretion by failing to hold a hearing on appellant's motion. Civ. R. 59 does not require that such a hearing be held. See Civ. R. 59(D). Accordingly, appellant's third assignment of error is found not well-taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Fulton County Court is affirmed.

We hereby certify this case to the Supreme Court of Ohio as being in conflict with *Brownfield* v. *McCullion* (1984), 20 Ohio App. 3d 197, and *Barber* v. *Curry* (1974), 40 Ohio App. 2d 346.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER, J., RESNICK, J., concur.