HOBAN, APPELLANT, *v.* RICE, REGISTRAR, BUREAU OF MOTOR VEHICLES, APPELLEE.

112

(No. 70-154—Decided February 24, 1971.)

114

*Messrs. Wiles, Doucher, Tressler, Martin & Ford* and *Mr. Henry Clay Scott,* for appellant.

*Mr. C. Howard Johnson,* prosecuting attorney, and *Mr. David H. Bodiker,* for appellee.

KRENZLER, J. In this case, we are concerned with R. C. 4511.191, the implied-consent statute, which was enacted to protect innocent motorists and pedestrians from injury and death caused by irresponsible acts of unsafe drivers on Ohio streets and highways. The broad purpose of the implied-consent statute is to clear the highways of and to protect the public from unsafe drivers.

Under the provisions of the implied-consent law, a person who operates a motor vehicle upon the public highways of this state is deemed to have consented to a chemical test to determine the alcoholic content of his blood if arrested for the offense of driving while intoxicated—such test to be administered under the procedures provided for by the statute.

However, if the licensee refuses to take the test, upon

the request of the police officer after having been advised of the consequences of his refusal, the test shall not be administered. It has been stated that, because such a person has the physical power to make the test impractical and dangerous to himself and to those administering the test, it is excused upon an indication of his unwillingness to take the test. *Bush* v. *Bright* (1968), 264 Cal. App. 2d 788, 71 Cal. Reptr. 123.

If a sobriety test is administered to the arrested person, there would be no suspension of that person's driver's license under R. C. 4511.191(D), and consequently no further proceedings would be required under R. C. 4511.191(E) through (H).

Under R. C. 4511.191(D), the Registrar has authority to suspend a driver's license only where there has been a refusal by the arrested person to submit to a chemical test, after being advised of the consequences and upon receipt by the Registrar of the report provided for in R. C. 4511.191(C).

R. C. 4511.191(D) requires that four conditions be stated in the affidavit of the arresting officer, and R. C. 4511.191(F) limits the scope of the hearing on the petition in the Municipal Court to the same four conditions, namely:

1. Whether the police officer had reasonable grounds to believe the person had been driving a motor vehicle upon the public highways in this state while under the influence of alcohol.

2. Whether the person was placed under arrest.

3. Whether he refused to submit to the test upon the request of the police officer.

4. Whether he was advised of the consequences of his refusal.

In hearing this matter and determining whether the appellant has shown error in the action taken by the Registrar, the court will decide the issue upon evidence presented by the Registrar or the person whose license is sought to be suspended. The trial court shall impose

the suspension provided for in R. C. 4511.191(D) only if it finds that the arrested person has failed to show error in the action taken by the Registrar, or in one or more matters within the scope of the hearing. The burden is on the appellant to prove by a preponderance of the evidence that there was error.

Our decision in *State* v. *Starnes*, 21 Ohio St. 2d 38, decided on January 14, 1970, resolved some of the issues raised in the lower courts in *Groff* v. *Rice, supra* (20 Ohio App. 2d 309), and *Hoban* v. *Rice, supra* (22 Ohio App. 2d 130).

*State* v. *Starnes* held that R. C. 4511.191 is constitutional in that it does not violate the search and seizure provision of the Fourth Amendment to the United States Constitution, nor the self-incrimination clause of the Fifth Amendment. Further, we held in *Starnes* that proceedings under R. C. 4511.191(F) are civil and administrative in nature, are intended for the protection of the traveling public, are independent of any criminal proceedings which may be instituted pursuant to other statutes or ordinances, and that R. C. 4511.191(F) is not violative of the Fourteenth Amendment.

We can now turn our attention to the other issues in the case. Of the four issues to be determined on a petition to review a license suspension order of the Registrar, only two are involved in this appeal, namely, whether appellant refused upon the request of Officer Whitmore to submit to a chemical test, as provided for in R. C. 4511.-191(A), and whether appellant was advised of the consequences of his refusal to submit to a test, as provided for in R. C. 4511.191(C).

Appellant contends (1) that since he did not remember anything he did not refuse to take the test because the refusal must be knowingly and intentionally made; (2) that he had no knowledge or recollection of being advised of the consequences of refusal to take the test, and the implied-consent law requires that he understand the consequences of his refusal; (3) that he was incapable of re-

fusing to take the test because of his physical condition, consequently there was no refusal; and (4) that the provisions of R. C. 4511.191(B) mandate that the test should have been given to him by the police officer because he was in a condition rendering him incapable of refusal. The Department of Motor Vehicles may not take advantage of the failure of the police officer to administer the test.

Appellee contends that the language of the implied-consent statute is plain and unambiguous, and that if the conditions set forth in the statute are met the Registrar is required to suspend the license of any person arrested. He contends further that appellant's lack of recollection is not inconsistent with his refusal to take the test; that all that is required is a refusal by the words, acts and total conduct of the licensee; and that it is not necessary that he know and understand the consequences of his refusal to take the test.

I. The first issue to be decided is whether a refusal to take a sobriety test must be knowingly and intentionally made. The licensee's words, acts, overall conduct and other manifestations of a willingness or unwillingness to take the sobriety test will be considered by the trier of the facts in determining whether there was a refusal.

The determination will be based on an objective standard, not a subjective standard, such as the state of mind of the licensee. The subjective state of mind of the licensee cannot control the outcome of the proceedings, and a police officer is not required to know the state of mind of the person arrested and determine whether such person understood he was refusing to submit to the test. To require that would place an impossible burden on the arresting officer.

Appellant's lack of recollection is not inconsistent with his refusal to take the sobriety test. It is possible for a licensee to be in such a state of intoxication that he does not understand what is happening, and, at the same time, by words, acts and general conduct to manifest an unwillingness or outright refusal to take the test. Although

he may later have no memory of what occurred, his mere statement that he does not remember anything that happened is insufficient to show that he did not refuse to take the test.

If we were to adopt appellant's theory, a licensee could refuse the test prescribed by R. C. 4511.191(A) and then, at a Municipal Court hearing, testify that he does not remember anything. The result could be to nullify the effect of the statute.

II. Appellant attempts further to nullify the effect of the statute by contending that he did not understand the consequences of his refusal to take the test.

R. C. 4511.191(C) requires only that the arresting officer advise the arrested person of the consequences of his refusal to submit to a chemical test. This advice shall be in a written form prescribed by the Registrar of Motor Vehicles and be read and shown to the arrested person.

The foregoing discussion concerning appellant's state of mind in regard to his refusal to submit to a test is equally applicable in regard to his understanding of the consequences of his refusal to take the test. When the advice as to the consequences of a refusal is given in the form prescribed by the Registrar, and there is a refusal to take the test, a claim by the licensee that he did not understand the consequences of refusing to take the test is not a defense to the license suspension.

We cannot subscribe to the defense of "too drunk to understand" as a means of nullifying the effect of the implied-consent statute without additional legislative requirements that the refusal be intelligently, knowingly and intentionally made.

III. Appellant's third contention is that, at the time of his arrest, he was so intoxicated as to be incapable of refusing, and therefore did not refuse to submit to a sobriety test. If this were the case, one of the four conditions necessary for a suspension of appellant's license, under R. C. 4511.191(D), would be lacking, and the suspension would be improper.

However, the trial court found no error in the suspension of appellant's license. It therefore determined that appellant was not incapable of refusing, but in fact did refuse to submit to a test. The Court of Appeals affirmed. Having reviewed the record, we find that the evidence given at the hearing supports that determination. It is also clear from the record that appellant was read and shown a form advising him of the consequences of refusing. There is no claim that the other two conditions stated in subsection (D) were not met.

IV. We now turn our attention to appellant's argument that R. C. 4511.191(B) placed a mandatory duty on the police officer to administer the test to him because he was incapable of refusing to take the test.

The purpose of R. C. 4511.191(B) is to permit a sobriety test to be administered to any person who is dead, unconscious, or who is otherwise in a condition rendering him incapable of refusal. This subsection emphasizes and makes clear the main purpose of the implied-consent law that even under the conditions enumerated in subsection (B) the driver has consented to the sobriety test. Subsection (B) cannot control subsection (F).

The language of R. C. 4511.191(B) clearly indicates that under the conditions specified therein there is no mandatory duty on the arresting officer to administer a sobriety test. Appellant is not prejudiced by this holding, because his license could only be suspended if all four conditions of R. C. 4511.191(F) were satisfied. If the test was not given, and in fact appellant was incapable of refusing, there was no refusal and the four conditions of R. C. 4511.191(F) would not be satisfied and there could be no suspension. The order suspending appellant's driver's license will not be revoked because of the arresting officer's failure to administer him a sobriety test. The provisions of R. C. 4511.191(B) are not mandatory; and appellant was not incapable of refusing to take the test, inasmuch as he did refuse to take it.

This case is one of first impression in this court con-

cerning the state of mind of the licensee regarding his refusal to take the test and his understanding of the consequences of refusing to take the test.

In jurisdictions having similar statutes the courts have held that if the four conditions of R. C. 4511.191 (F) are otherwise met a driver who refuses or manifests an unwillingness to take the required test is subject to the license suspension provisions regardless of the degree of his voluntary intoxication or lack of understanding resulting therefrom. *State Dept. of Highways* v. *Normandin* (1969), 284 Minn. 24, 169 N. W. 2d 222; *Bush* v. *Bright* (1968), 264 Cal. App. 2d 788.

*Garcia* v. *Dept. of Motor Vehicles* (Ore. 1969), 456 P. 2d 85, supports the position that the department makes out a defense to the petition upon proof that the test was offered according to the statutory instructions and that after all preliminary requirements were met the test was refused.

In the present case, the trial court found no error in the action taken by the Registrar under R. C. 4511.191(D), or in one or more of the matters within the scope of the hearing as provided in R. C. 4511.191(F), and affirmed the action taken by the Registrar.

Upon review of the entire record, and for the reasons stated above, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN and STERN, JJ., concur.

CORRIGAN, J., concurs in paragraphs one and two of the syllabus, but dissents from the judgment.

KRENZLER, J., of the Eighth Appellate District, sitting for LEACH, J.

CORRIGAN, J., dissenting. Subsection (B) of R. C. 4511.191, the implied-consent statute under consideration

in this appeal, provides that any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusing to submit to a chemical test shall be deemed not to have withdrawn consent provided by subsection (A) thereof and the test may be administered.

The majority, in effect, finds that this appellant was capable of refusing even though the record establishes, without contradicting evidence:

1. That defendant pleaded guilty to the charge of driving while under the influence of alcohol;

2. That defendant, in the hearing on appeal of the driver's license revocation, testified that he did not remember being arrested, or being asked to take a test, and his first recollection was awakening in the Upper Arlington jail;

3. That patrolman Whitmore, the arresting officer, testified on cross-examination:

"Q. At the time that you requested Mr. Hoban and asked him to take the test, do you feel he was able to give you an answer? I mean, do you feel that he knew what he was saying?

"A. I can only say, sir, that Mr. Hoban in my opinion was very intoxicated. Not only did his driving indicate so, but his overall actions. So *I couldn't intelligibly say whether he knew what I was taking about or whether he didn't.*

"Q. Maybe he wasn't capable of refusing the test.

"A. That is possible. *I couldn't tell you for sure.*" (Emphasis added.)

Then, on redirect, he testified, as follows:

"Q. Was he able to stand on his feet, most of the time?

"A. Well—

"Q. He wasn't passed out?

"A. Most of the time. He wasn't passed out.

"Q. Did he walk into the police station?

"A. With my help and another officer's help, yes, sir.

"Q. But he wasn't carried in?

"A. No sir. He wasn't.

"* * *

"The Court: Your testimony is that you did explain it to him and asked him to take this Breathalyzer test, and he said what? What was his response after this?

"The Witness: Your Honor, it is hard to explain. He completely refused, *would not answer, or give any reasons*. Along with his right to make a phone call, he completely refused to do so on this.

"The Court: In other words, he just stood silent for all intents and purposes?

"The Witness: Except when he was disobeying a lot of our normal operation procedures and we had to kind of calm him down." (Emphasis added.)

Nothing further need be adduced to demonstrate that, although appellant was not dead or unconscious, he obviously was incapable of understanding or refusing to submit to the test in question. Under the facts as reflected by the record, the police should have administered the chemical test, as authorized by the statute, rather than suggest refusal by appellant, which was unsupported by the evidence, thus securing an automatic suspension by the Registrar of appellant's driver's license for six months, contrary to the provisions of R. C. 4511.191 and thereby infringing on the constitutional rights of appellant.

I would reverse the judgment of the Court of Appeals.