**DISTRICT OF COLUMBIA, Appellant,**

v.

**Theodore ONLEY, Appellee.**

**No. 13880.**

District of Columbia Court of Appeals.

Argued Jan. 18, 1979.

Decided March 8, 1979.

---

8. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

David P. Sutton, Asst. Corporation Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corporation Counsel, and Richard W. Barton, Deputy Corporation Counsel, Washington, D. C., were on the brief, for appellant.

Thomas Abbenante, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

PER CURIAM:

The District of Columbia appeals an order in a drunk driving prosecution suppressing the results of two breathalyzer tests indicating the level of appellee's blood-alcohol. The trial court held that a person who was too drunk to give a voluntary consent was "otherwise in a condition rendering him incapable of refusal" within the terms of the District of Columbia Implied Consent Act, D.C.Code 1973, §§ 40–1001 to –1007, and that under the Act such a person could have the test results suppressed. The government argues that the statute means that only a person who is unconscious or physically unable to refuse the test by virtue of a disability other than the voluntary ingestion of alcohol can have the results suppressed at a later time. We affirm.

I.

The District of Columbia Implied Consent Act provides that any person who operates or has actual control of a motor vehicle in the District of Columbia gives thereby his consent for two chemical tests to measure his blood-alcohol level if he is arrested for driving a motor vehicle while under the influence of intoxicating liquor. D.C.Code 1973, § 40–1002(a).[1] A person who refuses to submit to the tests after having been informed of the Act's provisions and warned of the penalty for refusal will lose his license for six months or, if he is a resident without a driver's license, no license will be issued to him for six months. D.C.Code 1973, § 40–1005(a).[2] The statute also provides:

> Any person who is unconscious, or is *otherwise in a condition rendering him incapable of refusal,* shall be deemed not to have withdrawn the consent provided by section 40–1002 and the two tests may be given; except, that if such person thereafter objects to the use of evidence so secured, such evidence shall not be used and the license of such person shall be revoked, or, if he is a resident without a license, no license shall be issued to him for a period of six months. [D.C.Code 1973, § 40–1005(b) (emphasis added).]

II.

Police officers discovered appellee at about 4:20 p. m. on March 4, 1978, sitting in his car at a traffic light. As they watched, the car remained stationary through several changes of the light. Eventually the car moved through the intersection and continued on for some distance, weaving from lane to lane, until it came to rest at the curbside. The officers found appellee asleep at the wheel. They arrested him and transported him to the precinct station.

The officers told appellee that they wanted him to take a breathalyzer test, and they

---

1. We have held that a person suspected of driving a vehicle while under the influence of intoxicating liquor, if involved in a motor vehicle collision or accident in which bodily injury or death results, has no right to refuse to submit to chemical tests for blood-alcohol. *Murray v. United States,* D.C.App., 358 A.2d 314, 318–20 (1976), construing D.C.Code 1973, § 40–1002(b).

2. The fact that the statute implies "consent" and requires active "refusal" means only that the police officer may administer the test unless or until the person arrested objects. Consequently, "consent" and "refusal" are but two sides of the same coin in this context.

warned him that he would lose his license if he refused. Appellee asked the officers "how many points" were involved with this particular offense. Appellee then took two breathalyzer tests about a half hour apart. Between the tests he fell asleep and urinated on himself. Appellee was charged with driving while under the influence of intoxicating liquor. He moved to suppress the test results under § 40–1005(b) on the ground that his state of intoxication left him "incapable of refusal." After a hearing the trial judge found that at the time the tests were administered appellee was too drunk to be capable of giving a voluntary consent, and he ruled that under the statute appellee was "incapable of refusal." [3] The trial judge ordered the results suppressed and further directed that the Department of Motor Vehicles be informed of the suppression for its appropriate action.

The government appeals.[4]

### III.

Sections 40–1002(a) and –1005(a) of the Implied Consent Act present the arrested drunk driver with a choice: he can submit to the chemical test and face the probability that it will be used as evidence against him in an administrative or criminal proceeding, or he can refuse to submit to the test and face immediate revocation of his driver's license. That the choice must be an informed one is indicated by the requirement that the officer administering the test must warn the motorist of the consequences of refusal. What is more, the statute grants all persons the opportunity to make this informed decision, so that a

person who was unconscious when tested may revoke the consent implied by the statute and have the test results excluded as evidence in any enforcement proceeding. D.C.Code 1973, § 40–1005(b).

The issue before us, therefore, is whether the phrase "otherwise in a condition rendering him incapable of refusal" in § 40–1005(b) means, as the trial court held, a person who is unable to make this informed judgment by virtue of the voluntary ingestion of alcohol, or, as the government argues, a person who submits to the test because he is physically unable to refuse by virtue of a disability other than the voluntary ingestion of alcohol.[5] In light of the statute's requirement that the police officer give warning of the consequence of refusal, and in order to effectuate that requirement in a way that does not elevate its form over its substance, we hold that "otherwise in a condition rendering him incapable of refusal" refers to a person's lack of capacity to make an informed and intelligent waiver of a known right. This result is compelled by the statutory scheme that gives every person one opportunity to make an informed decision. It would be anomalous to construe the statute so that persons unconscious through intoxication could take advantage of the Act's provisions but persons somewhat less intoxicated and not unconscious could not. *Cf. Murray v. United States,* D.C.App., 358 A.2d 314, 318–20 (1976).

The government urges that its interpretation of the statute is borne out by the intent manifested in the legislative history. Generally we would look to the legislative

---

3. The government does not contest the adequacy of the evidentiary support for this finding. *See* D.C.Code 1973, § 17–305(a).

4. The government prosecutes this appeal pursuant to D.C.Code 1973, § 23–104(a)(1). The requirements of that provision have been met.

5. The government points to the following as examples of the physical impairments properly falling under the phrase: concussions, *In re Krahn,* 569 P.2d 982 (Okl.1977); emphysema, *Burson v. Collier,* 226 Ga. 427, 175 S.E.2d 660

(1970); and denture-related difficulties, *In re Scott,* 5 A.D.2d 859, 171 N.Y.S.2d 210 (1958). (Strictly speaking, the latter two cases did not involve a physical disability rendering the person unable to refuse, rather they involved a disability that thwarted completion of the test.) These three cases involve administrative actions to revoke driver's licenses as do all the government's cases refuting the "too-drunk-to-refuse" defense, beginning with *Hoban v. Rice,* 25 Ohio St.2d 111, 267 N.E.2d 311 (1971).

history for guidance, for example, when the enacted text was capable of two reasonable readings or when no one path of meaning was clearly indicated. 2A Sutherland, Statutory Construction § 48.01, at 182 (4th ed. 1973). No such occasion is presented by this statute. However, assuming such to exist, a resort to the legislative history of the Implied Consent Act does not detract from our reading of the statute. *See*

S.Rep. No. 1262, 92d Cong., 2d Sess., *reprinted in* [1972] D.C.Code Legis. & Ad. Serv. 286.

*Affirmed.*