## Stout v. McCullion
### [Cite as 8 AOA 591]

*Case No. 90AP-550*
*Franklin County, (10th)*
*Decided November 27, 1990*

*Earl K. Desmond, for Appellant.*

*Ronald J. O'Brien, City Attorney, James J. Fais, City Prosecutor, Brenda J. Keltner, Thomas K. Lindsey, and Mary Ann Torian, for Appellee.*

WHITESIDE, J.

Petitioner, Todd Stout, appeals a decision of the Franklin County Municipal Court which affirmed the one-year suspension of petitioner's driver's license for refusal to submit to a breath-alcohol-content test and sets forth one assignment of error as follows:

"The trial court erred as a matter of law when it ruled that petitioner failed to prove by a preponderance of the evidence that there was error in the license suspension."

Petitioner was arrested on July 4, 1989, at 2:12 a.m. and charged with operating a motor vehicle while under the influence of alcohol. He was transported to the Franklin County Jail, where he signed a constitutional rights waiver at 3:10 a.m. An implied consent form was then read to petitioner, but, when asked by the trooper whether he would submit to a chemical test, petitioner replied that he wanted to speak with an attorney. Petitioner was taken to a phone, and a deputy dialed the phone number petitioner gave him. Apparently, petitioner spoke on the phone with a friend of his, but the call was disconnected before the friend could provide him with the name of an attorney.

Petitioner then told the trooper that he had only reached a friend and that he still wanted to talk to an attorney but that he did not know the attorney's phone number. The trooper provided petitioner with a phone book, but was not certain whether it was the white or yellow pages. According to the trooper, he does not recall the petitioner's opening the phone book. A couple minutes later, at 3:30 a.m., the trooper indicated on his paperwork that petitioner had refused to take the chemical test, although he gave petitioner no further opportunity to take the test and only an hour and eighteen minutes had elapsed since the arrest. Petitioner contends that he opened the telephone book when it was given to him and that he had been looking through the names starting with "B" for the name Bjerke, being uncertain of the spelling, for only seven to ten seconds when the deputies led him away on the ground that petitioner was simply delaying.

Petitioner was subsequently notified by respondent Bureau of Motor Vehicles, Michael J. McCullion, Registrar, that his driving privileges would be suspended for a period of one year pursuant to R.C. 4511.191(D). Petitioner appealed the suspension to the Franklin County Municipal Court, alleging, *inter alia,* that he did not refuse to take the test. The cause was referred to a referee of that court, who, after conducting a hearing, recommended that the one-year suspension be imposed. The trial court adopted the report and recommendation of the referee, and from that decision petitioner filed the instant timely appeal.

By his sole assignment of error, petitioner contends that the trial court erred in upholding the license suspension for two reasons:

First, because petitioner was denied the "reasonable number of telephone calls" pro-

vided for in R.C. 2935.20 and, second, because he was not informed by the trooper before his actions were considered a refusal that he had to make a decision. For the following reasons, we find the assignment of error to be well-taken.

In determining whether the registrar committed error in the suspension of driving privileges, the burden is on the petitioner to prove by a preponderance of the evidence that there was indeed error. *Hoban v. Rice* (1971), 25 Ohio St. 2d 111. Whether error was committed in this case depends in part upon whether the police complied with R.C. 2935.20 and whether petitioner in fact refused to submit to the chemical test.

R.C. 2935.20 states in part:

"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a *reasonable number of telephone calls or in any other reasonable manner.* ***" (Emphasis added.)

Also relevant to this appeal is R.C. 4511.191(D), which states in part:

"If a person under arrest for operating a vehicle while under the influence of alcohol, *** refuses upon the request of a police officer to submit to a chemical test designated by the law enforcement agency *** no chemical test shall be given, but the registrar of motor vehicles *** shall suspend his driver's or commercial driver's license or permit *** for a period of one year ***."

This court discussed the interplay between R.C. 2935.20 and R.C. 4511.191 in *Siegwald v. Curry* (1974), 40 Ohio App. 2d 313, wherein we stated at 318-319:

"It is not a refusal to take the required test for the arrested person to request the exercise of his statutory right, under R.C. 2935.20, to telephone an attorney during this reasonable time period in which he is determining whether to take the test, so long as the delay occasioned by such communication with the attorney is short and reasonable. On the other hand, where questions are asked or requests made, including a request to consult an attorney, as a subterfuge to avoid taking

a test, there is a refusal within the contemplation of R.C. 4511.191. Basically, whether or not there has been a refusal is a factual determination to be made by the trial court based upon the facts and circumstances of the case."

Initially, then, it must be determined whether petitioner in good faith wished to consult with counsel before deciding whether to take the chemical test. *Columbus v. Maxey* (1988), 39 Ohio App. 3d 171. There was no allegation by the police officer in his report, nor any finding by the trial court that petitioner's request to consult with an attorney was anything other than a good-faith request.

The next issue, then, is whether petitioner thereafter refused to take the test, either by his actions or by his words. The Supreme Court of Ohio stated in *McNulty v. Curry* (1975), 42 Ohio St, 2d 341, paragraph three of the syllabus, that:

"A person 'refuses' to take such test where the attending law enforcement officers have complied with R.C. 2935.14 and 2935.20, and the accused continues to withhold his consent to submit to the test."

Petitioner contends here that the law enforcement officers did not comply with R.C. 2935.20 in that they did not provide him with a reasonable number of phone calls in which to contact the requested attorney. The record indicates that petitioner was able to make one phone call to a friend. However, that call became disconnected before the friend was able to provide petitioner with the name of an attorney. Thereafter, despite the disputed facts as to what happened next, there is no question but that petitioner was not permitted to make additional phone calls.

While the permitting of only one phone call may in some situations constitute the reasonable number of telephone calls contemplated by R.C. 2935.20, under these facts, we cannot agree with the trial court that petitioner was afforded his statutory rights by the officer. The parties agree that petitioner's initial call was disconnected before he obtained the name of an attorney. The parties also agreed that petitioner thereafter requested a phone book. Even accepting the testimony of the trooper, wherein he stated that he could not recall petitioner actually opening the phone book, petitioner's conduct would not justify a reasonable person in the position

of the trooper to believe the petitioner manifested a clear unwillingness to take the test. *Andrews v. Turner* (1977), 52 Ohio St. 2d 31. Therefore, limiting petitioner's phone calls to one that yielded no results did not fulfill the obligation of the state to permit petitioner to communicate with an attorney of his choice under R.C. 2935.20.

Furthermore, the trooper testified that, after giving petitioner the phone book, which he does not remember petitioner opening, he finished his paperwork and subsequently marked petitioner's form as having refused the test. While the trooper did not testify as to the length of time between the phone book being handed to petitioner and the petitioner's form being marked "refused," the record indicates that petitioner was initially read the constitutional rights waiver at 3:10 a.m., and that his implied consent form was marked "refused" at approximately 3:30 a.m. At the most, then, only twenty minutes elapsed from the time petitioner was first read his constitutional rights and then the implied consent waiver at the jail to the time he was led away without being advised he had to make a decision and without being given an opportunity to take the test. At that time, some forty-two minutes of the two-hour period for administering the test remained.

In *Lawton v. Bur. of Motor Vehicles* (1978), 57 Ohio App. 2d 159, this court reversed a decision of the trial court which concluded that plaintiff therein had failed to prove error by a preponderance of the evidence on the part of the bureau of motor vehicles in suspending plaintiff's driver's license for refusal to submit to a breathalyzer test. In that case, a period of only twenty-three minutes had elapsed between the reading of the implied-consent form and the decision by the officers that plaintiff had refused to submit to the breathalyzer. While that factor alone may not have been determinative of this court's decision, it is certainly one of the facts and circumstances to be taken into consideration. *Siegwald, supra.*

Moreover, in *Lawton, supra,* we held, as stated in the first paragraph of the headnotes, as follows:

"Where a police officer extends ample courtesies to a plaintiff accused of driving while intoxicated in allowing him the use of a telephone to reach his attorney, the officer must inform the plaintiff at the time of the last request to take the test that no further use of the telephone will be allowed and that it is necessary for the plaintiff to make a decision, after failing to contact such attorney, as to whether he will refuse to take the test without the advice of his counsel."

The facts in *Lawton* indicate that, after being arrested and taken to the police station, the plaintiff requested and received permission to call his attorney for advice before submitting to the test; that he placed several phone calls but was apparently unable to contact his attorney; that he was requested to take the test at least three or four times; and that, although the police officer did not believe that plaintiff was stalling, he determined that plaintiff "refused" to submit to the test.

In her report, which was adopted by the trial court, the municipal court referee distinguished *Lawton* on the ground that the police officer therein did not believe that the plaintiff was stalling and that the plaintiff was granted several requests to use the telephone. However, this court reversed the decision in *Lawton* precisely for the reason that the referee therein failed to reach a finding as to whether there had been a refusal by the plaintiff. Therefore, that distinction becomes unimportant.

As to the fact that the plaintiff in *Lawton* was permitted to make several telephone calls, that distinction does not support the referee's conclusion. We held in *Lawton* that the police officer was required to inform the plaintiff that no further use of the telephone would be allowed and that the plaintiff had to make a decision as to whether he would refuse to take the test without the advice of his counsel. That requirement becomes even more essential in a case such as this, where the petitioner has been permitted to make only one phone call. Although the trooper testified that he believed petitioner's conduct constituted a refusal, we find that he should have first informed petitioner that no more calls would be permitted and that petitioner must make an immediate decision whether or not to submit to the test. We so held in *Lawton* and find no reason not to apply that principle herein since this is a more compelling case than *Lawton.*

For the foregoing reasons, petitioner's single assignment of error is sustained, the judgment of the Franklin County Municipal

Court is reversed, and this cause is remanded to that court for further proceedings in accordance with law and this decision.

*Judgment reversed and cause remanded.*

McCORMAC and YOUNG, J.J., concur.