[Cite as *State v. Boyer*, 2015-Ohio-4951.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| LESLIE BOYER | : | Case No. 15-CA-09 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield Municipal
                             Court, Case No. TRC 1403710

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            November 25, 2015

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

DANIEL E. COGLEY                      AARON CONRAD
Assistant Prosecutor                  Conrad Law Office LLC
City of Lancaster                     120 1/2 E. Main Street
123 E. Chestnut St.                   Lancaster, OH 43130
P.O. Box 1008
Lancaster, OH 43130

*Baldwin, J.*

{¶1}  Appellant Leslie Boyer appeals a judgment of the Fairfield Municipal Court convicting her of operating a vehicle under the influence (R.C. 4511.19(A)(1)(a)), refusal to submit to a chemical test (R.C. 4511.19(A)(2)), and assured clear distance (Lancaster Codified Ord. 333.03).  Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2}  On April 9, 2014, Officer Matthew Poffenbarger of the Lancaster Police Department responded to a report of a vehicle leaving the scene of an accident.  The reporting party told Officer Poffenbarger that another driver struck the rear of his vehicle, then left the scene without exchanging insurance information.  The driver provided the officer with the license plate number of the vehicle that struck him, and stated that the fleeing driver appeared impaired.

{¶3}  Officer Poffenbarger located the other driver, later identified as appellant, at her home.  The officer walked around the vehicle and did not notice any damage.  Appellant acknowledged the crash, but claimed she had stopped and the vehicle in front of her rolled backwards into her vehicle.  The officer noted that appellant's eyes appeared glossy.  He asked her to produce a driver's license and proof of insurance.  She could not find her proof of insurance, and went to the vehicle to search for her insurance card.  During this time, the officer asked appellant if she had consumed drugs or alcohol prior to driving that evening.  She responded that she took Ambien and Tramadol.  Officer Poffenbarger administered field sobriety tests to appellant, and placed her under arrest for OVI.

{¶4} Officer Poffenbarger transported appellant to the Lancaster Police Department where he read her a BMV 2255 form. Appellant agreed to provide a urine sample. The officer asked a female dispatcher, Nicki Meadows, to assist in obtaining a sample from appellant. However, after about five minutes, appellant informed Meadows that she could not provide a sample. Appellant signed the BMV 2255 form, which acknowledged that she refused the urine test.

{¶5} Appellant was cited for violating R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2), operating a vehicle under the influence and refusing to submit to a chemical test with a prior conviction within the last twenty years. She was also cited with violating Lancaster Codified Ordinance 333.03, assured clear distance, and Lancaster Codified Ordinance 335.12, leaving the scene of an accident.

{¶6} Appellant moved to suppress evidence. Following a hearing, the court suppressed the results of the horizontal gaze nystagmus test and her admission to consuming alcohol, and otherwise overruled appellant's motion.

{¶7} The case proceeded to jury trial. Appellant was acquitted of leaving the scene of an accident, and convicted of OVI and refusal to submit to chemical testing. The court found appellant guilty of assured clear distance. She was sentenced to 180 days in the Fairfield County Jail with 160 suspended. She assigns three errors on appeal to this Court:

{¶8} "I. THE TRIAL COURT ERRED IN FINDING THE OFFICER HAD REASONABLE SUSPICION TO CONTINUE TO DETAIN DEFENDANT TO CONDUCT FIELD SOBRIETY TESTS.

{¶9} "II.  THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO ALLOW DEFENDANT TO INTRODUCE MEDICAL RECORDS.

{¶10} "III.  THE JURY'S GUILTY VERDICT FOR VIOLATING R.C. 4511.19(A)(2) WAS BOTH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SUPPORTED BY INSUFFICIENT EVIDENCE."

I.

{¶11} In her first assignment of error, appellant argues that once the officer had observed that there was no damage to her vehicle, the suspicions that triggered the initial investigation for leaving the scene of an accident were dispelled and he had no authority to detain her for the purpose of checking her driver's license or proof of insurance.

{¶12} Appellant relies on *State v. Chatton,* 11 Ohio St. 3d 59, 63, 463 N.E.2d 1237 (1984), in which the Ohio Supreme Court held that where a police officer stopped a motor vehicle which displayed neither front nor rear license plates, but upon approaching the stopped vehicle saw a temporary tag visible through the rear windshield, the officer could not detain the driver of the vehicle to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable.  Appellant argues that having ascertained at the scene that there was not damage to the other vehicle or the driver, once the officer noted no damage on appellant's car and determined that she was not injured, he could not detain her to ask for her driver's license and her proof of insurance.

{¶13} Lancaster Codified Ordinance 335.12 provides in pertinent part:

In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person driving or operating the motor vehicle, having knowledge of the accident or collision, immediately shall stop the driver's or operator's motor vehicle at the scene of the accident or collision and shall remain at the scene of the accident or collision until the driver or operator has given the driver's or operator's name and address and, if the driver or operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to any person injured in the accident or collision or to the operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision, or to any police officer at the scene of the accident or collision.

{¶14} In construing R.C. 4549.02, which includes the identical language found in Lancaster Ord. 335.12 cited above, this Court has held that $1.00 of damage is sufficient to sustain a conviction for leaving the scene of an accident. *State v. Maioriello*, 73 Ohio App.3d 350, 597 N.E.2d 185 (5th Dist. Stark 1992). Officer Poffenbarger testified that he didn't observe damage to either vehicle. However, as slight damage is sufficient to establish a violation of the statute, we decline to hold that

the officer cannot detain the driver to obtain a driver's license and proof of insurance simply because there is no obvious damage to either vehicle on a cursory examination.

{¶15} Further, regardless of whether the officer could detain appellant for violation of the statute concerning leaving the scene of the accident, the driver of the vehicle told Officer Poffenbarger that the vehicle struck him from behind. Therefore, the officer had a reasonable suspicion that appellant had committed a violation of the ordinance or statute concerning assured clear distance, and he could detain her for purposes of checking her driver's license and proof of insurance.

{¶16}  The first assignment of error is overruled.

II.

{¶17}  In her second assignment of error, appellant argues that the court erred in redacting portions of her medical records other than dates of treatment.

{¶18}  Appellant contended that she had a knee problem, contributing to her poor performance on field sobriety tests.  She sought to introduce medical records, through the testimony of the custodian of the records, to demonstrate that she had knee problems.  The trial court allowed the custodian to testify that records exist and indicate that appellant sought treatment on certain dates, but in the absence of expert testimony, the court excluded the diagnosis from admission into evidence.  The court therefore redacted any diagnostic information in the records.

{¶19} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.  *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph 2 of the syllabus (1987).

{¶20} Evid. R. 803(6) provides an exception to the hearsay rule for business records as follows:

> (6) **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶21} In determining whether a medical diagnosis included as hearsay in a business record is admissible, we have previously applied the test set forth by the 10th District in *Hytha v. Schwendeman*, 40 Ohio App.2d 478, 320 N.E.2d 312 (1974). In that case, the Franklin County Court of Appeals set forth seven elements which must be present before the record of a medical diagnosis made by a physician may be admitted into evidence:

{¶22} "(1) The record must have been a systematic entry kept in the records of the hospital or physician and made in the regular course of business;

{¶23} "(2) The diagnosis must have been the result of well-known and accepted objective testing and examining practices and procedures which are not of such a technical nature as to require cross-examination;

{¶24} "(3) The diagnosis must not have rested solely upon the subjective complaint of the patient;

{¶25} "(4) The diagnosis must have been made by a qualified person;

{¶26} "(5) The evidence sought to be introduced must be competent and relevant;

{¶27} "(6) If the use of the record is for the purpose of proving the truth of the matter asserted at trial, it must be the product of the parties seeking its admission;

{¶28} "(7) It must be properly authenticated."

{¶29} *Overcasher v. Northland Cranberries, Inc.,* 5th Dist. Stark No. 2003-CA-00365, 2004-Ohio-4942, ¶¶ 14-21.

{¶30} In the instant case, appellant did not demonstrate that the diagnosis was the result of well-known and accepted objective testing and examining practices and procedures which are not of such a technical nature as to require cross-examination, and she did not demonstrate the qualifications of the person making the diagnosis. We therefore conclude that the court did not abuse its discretion in excluding the medical diagnosis from evidence.

{¶31} Further, appellant sought to admit the records to verify her claim that she suffered from a knee injury. Appellant was permitted to present evidence that she

sought treatment from an orthopedic surgeon on February 20, 2014, August 7, 2014, September 9, 2014, September 19, 2014, and October 6, 2014. There is nothing in the record to indicate that admission of the diagnosis related directly to her performance on the field sobriety tests. Rather, appellant sought to admit the records to establish that she "was not alluding to some false or nonexistent leg or knee issue that was detailed in the State's video." Tr. 272. The admission of the dates of treatment with the orthopedic surgeon supported the veracity of her claim that she had problems with her knee. She has not demonstrated prejudice from the court's exclusion of the precise diagnosis of the doctor.

{¶32} The second assignment of error is overruled.

III.

{¶33} In her third assignment of error, appellant argues that the judgment finding her guilty of refusing to submit to a chemical test is against the manifest weight and sufficiency of the evidence. Specifically, she argues that she did not refuse the test, but was unable to urinate.

{¶34} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶35} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶36} R.C. 4511.19(A)(2) states:

{¶37} "(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:

{¶38} "(a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

{¶39} "(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests."

{¶40} A refusal to submit to a chemical test of the blood, breath or urine will occur where a person, by his acts, words or general conduct, manifests an unwillingness to submit to the test. *Hoban v. Rice,* 25 Ohio St.2d 111, 267 N.E.2d 311, paragraph 3 of the syllabus (1971). Such refusal need not have been knowingly and intentionally made. *Id.* Whether or not a driver refused a test is a factual determination

that is to be made by the trial court based upon all of the evidence before it. *State v. Owen,* 12th Dist. Warren No. CA97-12-229, 1998 WL 729204 (Oct. 19, 1998).

{¶41} In *State v. Brown,* 12th Dist. Clermont No. CA2013–04–029, 2013-Ohio-4981, the 12th District Court of Appeals reversed an administrative license suspension based on refusal to submit to a urine test where the officer testified that the defendant agreed to take the urine test, attempted to provide a sample several times, and drank multiple glasses of water. *Id.* at ¶12.

{¶42} In the instant case, the dispatcher testified that appellant tried for five minutes to provide a sample, and then told the dispatcher that she was unable to go to the restroom. Appellant never indicated to the dispatcher that she wanted to try again to produce a sample. Officer Poffenbarger testified that appellant attempted to provide a sample, but could not. Appellant signed a BMV 2255 form, which stated that she refused the test.

{¶43} The jury could find that by appellant's actions and conduct, she submitted an unwillingness to submit to the test after initially agreeing to the test. Despite facing a mandatory two-year license suspension for refusing to submit to the test, appellant attempted to provide a sample for only five minutes and did not attempt to provide another sample. The judgment is not against the manifest weight and sufficiency of the evidence.

{¶44}  The third assignment of error is overruled.  The judgment of the Fairfield County Municipal Court is affirmed.  Costs are assessed to appellant.


By: Baldwin, J.

Delaney, J. concurs.

Hoffman, P.J. concurs in part
And dissents in part

*Hoffman, P.J., concurring in part and dissenting in part*

**{¶45}** I concur in the majority's analysis and disposition of Appellant's third assignment of error.[1]

**{¶46}** I further concur in the majority's disposition of Appellant's first assignment of error, but do so for a different reason.

**{¶47}** The majority reasons because even slight damage is sufficient to establish violation of the statute [ordinance], the officer can detain the driver to gather additional information even though there was no obvious damage to either vehicle on cursory examination. While I agree even slight damage would suffice, the evidence in the case sub judice shows there was no damage or injury to person or property. The jury's verdict of not guilty of the leaving the scene of an accident charge arguably supports the conclusion there was no damage.

**{¶48}** Nevertheless, I concur in overruling the first assignment of error because I find a distinction between "detention" and "investigation."

**{¶49}** In *State v. Chatton*, (1984) 11 Ohio St.3d 59, the Ohio Supreme Court found a stopped motor vehicle could not be further detained after determining the temporary license tag was visible. Unlike *Chatton*, no stop or detainment of a motorist occurred here. The officer did not "detain" Appellant, but rather was in the process of investigating an accident and the possibility of the commission of a traffic violation(s). I find the circumstances which evolved during that investigation gave the officer reasonable suspicion to conduct the field sobriety tests.

---

[1] I do so despite Officer Poffenbarger's belief Appellant did not refuse to submit to the urine test. The officer's subjective opinion does not prevail over the jury's finding based upon the evidence.

{¶50} Accordingly, I concur in the majority's decision to overrule Appellant' first assignment of error.

{¶51} I disagree with the majority's analysis of Appellant's second assignment of error.

{¶52} The majority concludes the trial court did not abuse its discretion in excluding the medical diagnoses contained within the medical records Dr. Voto, which is marked as Defendant's Exhibit 2. It do so for two reasons.

{¶53} First, the trial court determined medical records do not demonstrate the qualifications of the person making the diagnosis. I disagree.[2]

{¶54} The medical records reflect the medical treatment and diagnoses were rendered by Dr. Stephen Voto of the Southeast Ohio Regional Orthopedic Center. The records demonstrate Dr. Voto is an orthopedic surgeon, which fact was corroborated by the testimony of the medical records custodian. As such, I find the qualifications of the person making the diagnoses were established.

{¶55} The other reason the majority relies upon to support the trial court's decision is the fact Appellant did not demonstrate the diagnosis was the result of well-known and accepted objective testing and examining practices as well as procedures which are not of such a technical nature as to require cross-examination. From my review of the medical records, I find much, if not all, of the information contained in the records was not of such a technical nature as to require cross-examination. And, more

---

[2] The majority notes this Court has applied the seven factor test found in *Hytha v. Schwendeman* (1974), 40 Ohio App. 2d. 478. The majority bases its analysis on only two of those factors. I find the other five factors all support admission of the medical records herein.

importantly, I find much of the information contained therein was factual information, not diagnoses, that was improperly excluded.

{¶56} The trial court made it clear the only testimony admissible from the medical records would be the date(s) of treatment. The trial court specifically excluded any testimony regarding which body part was being treated and of what the treatment consisted. The trial court excluded far more than just diagnoses.

{¶57} The medical records reflect Appellant had a two-view x-ray of her right knee on September 4, 2013. This is a fact, not diagnosis.

{¶58} The records further reflect Appellant had surgery on her right knee on September 9, 2014, again a fact, not a diagnosis. While the preoperative and postoperative diagnoses may have been properly excluded, the fact Appellant had surgery on her right knee should not have been.

{¶59} Finally, the postoperative examination of Appellant by Dr. Voto noting swelling of Appellants right knee is not a diagnosis, but rather a physical finding.

{¶60} I find for the trial court to have excluded the factual evidence noted above as it specifically relates to Appellant's right knee was error.

{¶61} The question next becomes, whether the exclusion of the evidence constituted prejudicial or harmless error.

{¶62} The state of Ohio argues even if the medical records should have been admitted, Appellant was not unfairly prejudiced because the medical records custodian testified Defendant was being seen for her knee. In support, the state of Ohio cites page 286 of the record.

**{¶63}** Upon review, I find the state's assertion disingenuous. While the witness did respond Dr. Voto was seeing Appellant for her knee, the state of Ohio immediately objected, which objection was sustained. Further, when Appellant attempted to solicit testimony concerning her surgery [on her right knee], the state of Ohio again immediately objected, which objection was also sustained. The state of Ohio made it a point during closing argument there was no exhibit or testimony to prove Appellant had any [knee] condition (Tr. at 316). Had the improperly excluded evidence been admitted, such argument could not have been made.

**{¶64}** The majority finds Appellant did not demonstrate prejudice from the exclusion of the diagnosis, in part, because there is nothing in the record to indicate that admission of the diagnosis related directly to her performance on the field sobriety tests. I find the fact the medical records reflect Appellant sought treatment for her right knee on two occasions prior to the date of the offense and had surgery on that knee five months later, would allow the jury to infer her right knee condition was related directly to her performance on the field sobriety tests.

**{¶65}** The majority further concludes no prejudice resulted because the admission of the dates of treatment with the orthopedic surgeon supported the veracity of her claim she had problems with her knee. I think such begs the question. Without being able to establish what those treatments were for, the veracity of her claims about her knee problem were not properly supported. Hence, the state of Ohio was able to comment during closing argument as to the lack of evidence of a knee condition, supra.

{¶66} While I concede there was other evidence of impairment, I do not find the weight of such sufficiently overwhelming to conclude the exclusion of the medical records, in toto, could not have affected the outcome of the trial.