In May of 1997, defendant-appellant, Mark Owen, was charged with failure to drive in a marked lane in violation of R.C. 4511.25, operation of a motor vehicle without a valid operator's license in violation of R.C. 4571.02, and driving while intoxicated ("DWI") in violation of R.C. 4511.19. Appellant pled no contest to the operator's license violation; the marked lane violation and the DWI charges were tried simultaneously to a jury in the Middletown Municipal Court. Appellant was convicted and now appeals. Finding all six of appellant's assignments of error without merit, we affirm his conviction.
On May 10, 1997, at approximately 12:15 a.m., Deputy Kent Hall ("Hall") of the Butler County Sheriff's Office was stopped behind appellant at the intersection of Tytus Avenue and Verity Parkway, headed northbound on Tytus Avenue. Hall watched as appellant made a left-hand turn from Tytus onto Verity. At trial, Hall testified that as appellant "pulled into Verity Parkway, he traveled off the right side of the roadway, completely off the right side next to the used cars that are parked at that intersection." Hall testified that "[t]he whole width of the [appellant's] vehicle was off the roadway." Hall followed appellant until he made a right turn onto a side street and then executed a traffic stop.
Upon approaching appellant's car, Hall testified that he noted a strong odor of alcohol. He requested that appellant step out of his car and perform a series of field sobriety tests. As appellant exited his car, Hall noted that appellant was unsteady on his feet and grabbed onto the car in an effort to steady himself. Hall also noted that appellant's speech was slurred, and he was "very difficult to understand when questioned about his driving actions."
At trial, Hall testified as to how the horizontal gaze nystagmus ("HGN") test is administered, what training he had received in administering it, and how the HGN test is scored. Hall also testified that when he administered the HGN test to appellant, appellant scored a total of six out of a possible six clues, thereby suggesting that appellant was driving under the influence of alcohol. Hall also subjected appellant to the heel-to-toe test and the finger-to-nose test, both of which appellant failed. Based upon appellant's performance on the aforementioned field sobriety tests, Hall placed appellant under arrest and transported him to the Middletown jail to perform a breathalyzer test.
Upon arriving at the Middletown jail, Hall completed and read to appellant Bureau of Motor Vehicles 2255 Form which provides in part:
 You are now under arrest for operating a vehicle while under the influence of alcohol * * * and will be requested by a police officer to submit to a chemical test to determine the concentration of alcohol * * * in your blood, breath, or urine.
 If you refuse to submit to the requested test or if you submit to the requested test and are found to have a prohibited concentration of alcohol in your blood, breath, or urine, your driver's * * * license * * * will be suspended for the period of time specified by law by the officer, on behalf of the Registrar of Motor Vehicles.
Hall then gave appellant instructions about the mechanics of supplying a valid breath sample. Hall testified that appellant attempted to blow into the machine several times to provide a sample, but never blew long enough to give a valid reading. Based upon appellant's acts and general conduct, Hall concluded that appellant was unwilling to provide a sample and categorized the test result as a "refusal." Hall then examined the breathalyzer mouthpiece for obstructions, tagged it as evidence, and suspended appellant's license.
Appellant appealed his license suspension and an Administrative License Suspension (ALS) hearing was set for June 2, 1997. At the ALS hearing, Hall testified about the conditions surrounding appellant's traffic stop and appellant's subsequent failure to provide a breath sample. Specifically, Hall testified that he had "advised the defendant if he did not complete the test I would be forced to mark it as a refusal." Also at the ALS hearing, appellant's counsel was allowed to cross-examine Hall. Upon hearing the evidence, the trial court overruled appellant's ALS appeal.
Appellant then filed a motion to suppress evidence, contending that Hall lacked reasonable suspicion and/or probable cause to execute a valid traffic stop. The matter was set for hearing on June 27, 1997, where, once again, Hall testified about the conditions surrounding appellant's traffic stop and appellant's counsel was provided an opportunity to cross-examine Hall. Upon review of the evidence, the trial court determined that Hall had "reasonable, articulable suspicion" to stop appellant and denied the motion to suppress.
A jury trial commenced on September 11, 1997. At trial, Hall again testified about the conditions surrounding appellant's arrest. Additionally, appellant took the stand and testified that he had not swerved out of his lane after turning northbound onto Verity Parkway. Appellant also testified that Hall stopped him on Hughes Street and steadfastly denied failing the finger-to-nose field sobriety test.
During cross-examination of Hall at trial, appellant's counsel raised an issue over the exact location of the traffic stop. Between the testimony given at the ALS hearing, at the motion to suppress hearing, and at trial, the record reveals controversy over whether Hall stopped appellant following a right-hand turn onto Panama Street, or a right-hand turn onto Hughes Street. On the second day of trial, appellant's counsel requested a short continuance in order to obtain documentary evidence that would affirmatively establish the location of appellant's traffic stop. Holding, however, that appellant's counsel had "had adequate opportunity to prepare for this case," the trial court overruled appellant's request for a continuance.
No transcript of the actual jury charge has been provided to this court on appeal. However, from the parties' briefs and pretrial pleadings, we are able to presume that the jury was provided instructions before deliberation.[1] In pretrial pleadings, appellant argued to the court that the jury should not be provided the standard jury instruction on "refusal" contained in 4 Ohio Jury Instructions (1997) 501, Section 545.25(10), but instead, should be given a modified jury instruction addressing appellant's verbal consent to take the breath test. The trial court gave the jury the standard "refusal" instruction and declined to give appellant's modified instruction. On September 12, 1997, the jury unanimously convicted appellant of DWI in violation of R.C. 4511.19(A)(1).
On September 28, 1997, appellant filed a motion for a new trial contending that evidence establishing the exact location of appellant's traffic stop had been newly discovered in the form of appellant's tow bill receipt. Consequently, appellant prayed for a new trial. A hearing on the new trial motion was held on November 21, 1997. When the trial court overruled the motion, appellant filed the instant appeal.
In his first assignment of error, appellant contends:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
In this assignment of error, appellant contends that a traffic stop is reasonable under the Fourth Amendment only where there is reasonable articulable suspicion that the automobile, or its occupant is subject to a violation of law. Delaware v. Prouse (1979), 440 U.S. 648, 663, 99 S.Ct. 1391. Further, appellant contends that appellee did not put forth sufficient evidence to establish that Hall had the requisite reasonable, articulable suspicion to stop, detain, and arrest appellant. Upon review of the record and applicable case law, we disagree.
In support of his contention, appellant cites this court's decision in State v. Wilhelm (Apr. 4, 1997), Butler App. No. CA96-12-272, unreported. In Wilhelm, we reversed a DWI conviction, holding that reasonable, articulable suspicion must be gleaned from the totality of the circumstances surrounding a traffic stop. The Ohio Supreme Court however, on the authority of Dayton v. Erickson (1996), 76 Ohio St.3d 3, reversed this court's decision. State v. Wilhelm (1998), 81 Ohio St.3d 444.
In Erickson, the supreme court was faced with determining whether the proper inquiry in a DWI case is whether a reasonable officer could have validly stopped the driver (known as the "objective" analysis), or whether a reasonable officer would have stopped the driver (known as the "subjective" analysis). After extensive examination of several Ohio DWI cases, the court concluded that "where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under theFourth Amendment to the United States Constitution * * *." Id. at 11. Thus, the court adopted the "objective" test. "[W]here an officer has reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." (Emphasis added.) Id. at 11-12.
The record before this court indicates that Hall observed appellant committing a traffic violation in the form of a marked lane violation. Hall testified that he watched as appellant's car traveled completely off the right-hand side of the road. Given these circumstances, we find that Hall not only could, but was indeed justified to, execute a traffic stop. We decline to substitute our judgment on this matter for that of the observing and arresting officer. Accordingly, we find that the trial court correctly applied the governing law in the instant case and we affirm the trial court's decision denying appellant's motion to suppress evidence. Appellant's first assignment of error is hereby overruled.
In his second assignment of error appellant contends:
 THE TRIAL COURT ERRED IN ADMITTING EVIDENCE RELATED TO THE HORIZONTAL GAZE NYSTAGMUS TEST.
In this assignment of error, appellant argues that under the current version of Evid.R. 702, a police officer cannot testify about conclusions drawn from the HGN field sobriety test without a scientific basis. In light of the significant case law contrary to appellant's stated position, appellant argues that because such case law was established prior to Evid.R. 702's amendment in 1994, it should be of no precedential value to this court. We disagree.
In State v. Bresson (1990), 51 Ohio St.3d 123, the Ohio Supreme Court held that scientific expert testimony regarding the HGN test is not required in order to admit evidence relating to the HGN test. See, also State v. Taggart (June 2, 1997), Butler App. No. CA96-09-175, unreported, and State v. Webber (Jan. 1, 1998), Butler App. No. CA97-03-059, unreported. Specifically, in Bresson, syllabus, the supreme court held:
 [A] properly qualified [police] officer may testify at trial regarding a driver's performance on the HGN test as to * * * whether the driver was operating a vehicle while under the influence of alcohol. * * *
The supreme court established that HGN test results and conclusions drawn therefrom are admissible "so long as the proper foundation has been shown both as to the officer's training and ability to administer the test and as to the actual technique used by the officer * * *." Id. at 128. The court reasoned that because HGN tests are not like "other scientific tests, such as a polygraph examination" and "since no special equipment is required in [their] administration, * * * [t]he admission of the results of the HGN test is no different from any other field sobriety test, such as finger-to-nose, walk-and-turn, or one-leg stand." Id. at 129. Accordingly, we find HGN test results do not fall within the ambit of Evid.R. 702 and do not require scientific expert testimony for their admission.
Even assuming, in arguendo, that appellant could establish that the HGN test is similar to other "scientific tests," therefore falling within the ambit of Evid.R. 702 and requiring expert testimony to be admissible, an analysis of amended Evid.R. 702 reveals that the admission of Hall's testimony concerning how he administered appellant's HGN test, and the admission of Hall's conclusions, were not in error. The 1994 Staff Notes following Evid.R. 702 indicate that the rule's amendments were intended "to reflect the Ohio Supreme Court interpretations of the rule" and that "no substantive change from prior law is intended." Additionally, the Staff Notes specifically state that any amendments to Evid.R. 702(C), were simply designed to codify Bresson. Thus, this court finds appellant's assertion that case law established prior to Evid.R. 702's amendment has no precedential value wholly unpersuasive.
In the instant case, Hall testified that he was trained and certified to administer the HGN test. Hall further testified about how he conducted and scored appellant's HGN test. Accordingly, the trial court properly admitted evidence relating to appellant's HGN test and the conclusions Hall drew therefrom. Appellant's second assignment of error is overruled.
In his third and fifth assignments of error appellant contends:
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN PERMITTING EVIDENCE OF THE ARRESTING OFFICER'S OPINION THAT THE APPELLANT [sic] REFUSED THE BREATHALYZER TEST.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE EFFECT OF A REFUSAL OF A BREATHALYZER EXAMINATION AND FAILURE TO GIVE THE APPELLANT'S (sic) PROFFERED INSTRUCTION ON CONSENT TO A BREATHALYZER EXAMINATION.
Because both assignments of error address the trial court's treatment of appellant's breathalyzer test results, we shall address them together. Appellant argues that Hall should not have been allowed to testify regarding appellant's "subjective state of mind," or his conclusion that appellant refused to provide a breath sample, because appellant did not provide an "express and unequivocal refusal" to take the test. Because an "express and unequivocal refusal" did not exist, appellant further argues that the trial court erred in providing the jury the standard "refusal" instruction contained in Ohio Jury Instructions ("OJI").[2] On the other hand, appellee argues that Hall's testimony concerning appellant's refusal was properly admitted because Hall was qualified to testify as an expert on standardized DWI tests and results. Consequently, appellee argues the trial court properly provided the jury OJI's standard "refusal" instruction. Upon review of the record and the applicable case law, we affirm the trial court's determination on both of these issues.
The case law addressing "refusal" has been well-settled for over two decades. Specifically, in Hoban v. Rice (1971), 25 Ohio St.2d 111, paragraph three of the syllabus, the supreme court stated:
 a refusal to submit to a chemical test of the blood, breath or urine will occur where a person, by his acts, words or general conduct, manifests an unwillingness to submit to the test. Such refusal need not have been knowingly and intentionally made.
We note at the outset that whether or not a driver refused a test is a factual determination that is to be made by the trial court based upon all of the evidence before it. State v. Basya (Feb. 4, 1997), Ross App. No. 96CA221, unreported, at 6. Such a refusal may be established when
 the evidence shows that the person who was given the request and advice * * * had thereafter conducted himself in such a way as to justify a reasonable person in the position of the requesting officer to believe that such requested person was capable of refusal and manifested unwillingness to take the test.
Andrews v. Turner (1977), 52 Ohio St.2d 31, paragraph one of the syllabus. Thus, contrary to appellee's assertion, and as established by the Ohio Supreme Court, expert testimony is not needed to establish a refusal.
Furthermore, a trial court's determination of a refusal must "be based upon an objective standard, not a subjective standard." Hoban v. Rice (1971), 25 Ohio St.2d 111, 117. "The subjective state of mind of the licensee cannot control the outcome of the proceedings, and a police officer is not required to know the state of mind of the person arrested * * *." Id. Once the finder of fact has determined that a refusal did indeed occur, the burden of proof shifts to the licensee to show error in such determination. Andrews v. Turner (1977), 52 Ohio St.2d 31, 38. The licensee may do this in any number of ways, including, but not limited to, showing that the breathalyzer device was defective, or that the licensee was physically incapable of providing a breath sample. Id.
In the instant case, the record indicates that Hall advised appellant about (1) how to give a valid breath sample, (2) the consequences of refusing to provide such a sample, and (3) the fact that if appellant did not succeed in providing a sample he (Hall) would be forced to mark appellant's attempt a refusal. The record also indicates that appellant engaged in acts and conduct that would allow a reasonable person, standing in Hall's shoes, to objectively conclude that appellant was capable of taking the test, but manifested an unwillingness to do so. Furthermore, appellant failed to provide any evidence indicating that Hall's conclusion was erroneous. Appellant did not challenge the breathalyzer device as defective, nor did he allege a physical condition that prevented him from providing a valid sample, nor did he offer any other mitigating evidence. Accordingly, we find that the trial court did not commit error when it permitted Hall to testify about his conclusion that appellant refused the breathalyzer test. Appellant's third assignment of error is overruled.
Additionally, as the Ohio Supreme Court stated in Hoban, "a refusal need not have been knowingly and intentionally made." Id., paragraph three of the syllabus. In Maumee v. Anisik (1994),69 Ohio St.3d 339, syllabus, the Ohio Supreme Court of Ohio held that "where a person arrested for driving under the influence of alcohol is requested to submit to a chemical test of breath, but refuses to take the test, and the reason for the refusal is conditioned, unequivocal, or a combination thereof" (emphasis added) the "jury instructions set forth in 4 Ohio Jury Instructions (1993) 405 Section 545.25(10)" are proper.[3]
Thus, we find appellant's contention that in the absence of his "express and unequivocal refusal" the jury should not have been given OJI's standard "refusal" instruction unconvincing. The trial court did not commit error when it provided the jury with OJI's standard "refusal" instruction; nor did it commit error when it declined to provide the jury with appellant's modified instruction. Accordingly, appellant's fifth assignment of error is overruled.
In his fourth assignment of error appellant contends:
THE TRIAL COURT ERRED IN DENYING A MOTION FOR CONTINUANCE.
Under this assignment of error appellant appears to argue that because Hall's testimony about the exact location of appellant's traffic stop (either Panama Street or Hughes Street) was a surprise, the trial court should have granted his motion for a brief continuance so that he could produce the tow bill. Appellant alleges that the tow bill would have contradicted Hall's testimony about where the traffic stop actually occurred.
We begin by setting forth the standard of review for a denial of a continuance. The Supreme Court of Ohio has repeatedly held that the decision to grant or deny a continuance "is a matter which is entrusted to the broad, sound discretion of the trial judge." State v. Unger (1981), 67 Ohio St.2d 65, 67. Therefore, an appellate court may not reverse the denial of a continuance unless a trial court has abused its discretion. As this court has previously stated, an abuse of discretion connotes more than a mere error in judgment; it implies an arbitrary, unreasonable or unconscionable attitude. State v. Montgomery (1991), 61 Ohio St.3d 410,413.
When evaluating a motion for a continuance, the trial court shall balance a number of factors, including:
 the length of the delay requested; whether other continuances have been requested and received; the inconvenience to the litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors depending on the unique facts of each case.
Unger at 67-68.
In the instant case, appellant's counsel had two opportunities prior to trial (the ALS hearing and the motion to suppress hearing) to press Hall on the exact location of appellant's traffic stop. Two and one-half months prior to trial, at the motion to suppress hearing, Hall testified that "[appellant] made a right turn onto Panama, I believe it was Panama, and at that time I stopped him." Hall testified similarly at trial when he stated that the stop occurred at "on Panama at Hughes." Yet, in spite this testimony, while arguing his motion for a continuance to the trial court, appellant's counsel insinuated that Hall's testimony was a surprise, stating that "literally for the first time yesterday," Hall "clarified" where the traffic stop had occurred. Appellant's counsel also remarked, "all this time I've know [sic] that Mark [appellant] has turned at Hughes and not at Panama."
Given the facts above, it is clear that appellant's counsel had access to the necessary facts prior to trial, and had sufficient time to obtain, with reasonable diligence, physical evidence establishing exactly where appellant's traffic stop occurred. Upon review of the record, one could easily conclude that appellant's counsel's request for a continuance was indeed dilatory, purposeful, and contrived; however, we will instead state that appellant's argument for continuance was wholly disingenuous, at best. Accordingly, the trial court did not abuse its discretion when it concluded that appellant's counsel had "adequate opportunity to prepare for this case." Appellant's fourth assignment of error is overruled.
In his sixth assignment of error, appellant contends:
 THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S [sic] MOTION FOR A NEW TRIAL.
Appellant contends under this assignment of error that pursuant to Crim.R. 33(A)(1), (3), and (6), the trial court should have granted his motion for a new trial. Specifically, appellant contends that "irregularity in the proceedings," "surprise," and the tow bill as "newly discovered evidence," all warrant a new trial.
This court has previously articulated that a trial court must consider the following six factors when determining whether a motion for a new trial should be granted on the basis of "newly discovered evidence":
 To warrant the granting of a motion for a new trial in a criminal case, based upon the grounds of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.
State v. Blankenship (Dec. 18, 1995), Butler App. No. CA95-07-120, unreported, at 4, citing State v. Seiber (1990),56 Ohio St.3d 4, and State v. Petro (1947), 148 Ohio St. 505. "The allowance of a motion for a new trial on the grounds of newly discovered evidence is within the competence and discretion of the trial judge; and in the absence of a clear showing of abuse, such decision will not be disturbed." State v. Williams (1975),43 Ohio St.2d 88, paragraph two of the syllabus.
Turning to the instant case, we find that appellant failed to establish the existence of any of the six factors articulated in Blankenship. Appellant has failed to put forth any evidence establishing that if the jury had before it the tow bill, which showed that Hall stopped appellant on Hughes Street rather than Panama Street, they would not have convicted him for DWI. Additionally, in his reply brief to this court, appellant's counsel readily admits that "the evidence was available to be presented at trial * * *," and based upon our analysis above pursuant to appellant's request for a continuance, we have already stated that the tow bill could, in the exercise of due diligence, have been discovered prior to trial.
With respect to the issue of materiality, when the issue before a jury is whether an individual was behind the wheel of a motor vehicle while under the influence of alcohol, we find that the name of the street upon which the driver was stopped is not a material issue. Furthermore, in light of appellant's testimony that he was stopped on Hughes Street, we find that the admission of the tow bill would have merely amounted to cumulative evidence designed to impeach and contradict Hall's testimony.
After thoroughly reviewing the record and applicable case law, we find appellant's argument that his conviction should be reversed and a new trial granted borders on frivolity. Accordingly, appellant's sixth assignment of error is overruled.
Judgment affirmed.
KOEHLER and POWELL, JJ., concur.
[1] This court's presumption is authorized by Knapp v. Laboratories (1980), 61 Ohio St.2d 197, 199: "The duty to provide a transcript for appellant review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing reference to matters in the record. * * * When portions of the transcript necessary for resolution of assigned error are omitted from the record, the reviewing court has nothing to pass upon and thus, * * * has no choice but to presume the validity of the lower's court's proceedings * * *."
[2] 4 Ohio Jury Instructions (1997) 501, Section 545.25(10) provides:
 Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his/her (blood) (breath) (urine) to determine the amount of (alcohol) (drug of abuse) in his/her system, for the purpose of suggesting that the defendant believed he/she was under the influence of (alcohol) (drug of abuse) (alcohol and a drug of abuse). If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of (alcohol) (drug of abuse) (alcohol and a drug of abuse).
[3] 4 Ohio Jury Instructions (1993) 405, Section 545.25(10) is identical to 4 Ohio Jury Instructions (1997) 501, Section 545.25-(10), the only difference being that the latter is a more recent citation.